No. 62.—LORINE LANCTON, plaintiff in error *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The legal signification of an entry upon the minutes, in the trial of a capital case of "Juror withdrawn, mis-trial declared", is, that the discharge of the Jury was with consent of the defendant, by agreement between the respective counsel.

Application for discharge on Habeas Corpus.    Decided by Judge FLEMING, at Chambers, January, 1854.

Lorine Lancton was indicted in the Superior Court of Glynn county, for the offence of murder.    At November Term, 1853, he was placed upon his trial under this bill, and a jury regularly impannelled.    The minutes of that term showed the following entry : " *The State vs. Lorine Lancton. Murder.* Juror withdrawn and a mis-trial declared."    In January, 1854, Lancton applied for his discharge under a Habeas Corpus, on the ground that he could not be again legally placed upon trial for this offence.    Judge *Fleming* refused the application, and this decision is assigned as error.

WILSON for plaintiff in error.

Sol. General LONG for defendant in error.

*By the Court.*—STARNES, J., delivering the opinion.

It is admitted that a jury sworn in a capital case, may be discharged before verdict, by consent, or from pressing necessity, and the prisoner again tried.

This may well be admitted'; for the rule is now established upon a very solid basis of precedent and reason.

With much pains and research, this Court, in the case of *Reynolds vs. The State* (3 *Kelly,* 59) has reviewed this subject, and settled this rule for our State.

[1.] The only question then, for our consideration here, is, whether or not by this record, it appears that the jury in this

case before us, was discharged with consent of the prisoner, or from necessity.

If we were doubtful of the precise and accurate signification of the entry, " Juror withdrawn and mis-trial declared", yet we would be very loth to hold, in this case, which is not a final proceeding, that the record did not show a lawful discharge of the Jury. We incline very much to think, that in such a proceeding, it might be our duty, in favor of a high, judicial officer, to hold by intendment that he had thus discharged the Jury in accordance with Law, and by inadvertence had failed to make the record complete.

In such event, when the case went back, if the plea was set up that the Jury had been discharged without his consent, if not true, it might be traversed, and thus justice would not be sacrificed to form.

If the point had reached us upon a final hearing, then *in favorem vitae*, it would be our duty to hold the State to the record.

But on this subject it is unnecessary to do more than merely announce the inclination of our minds; for we think, that the record with sufficient certainty shows that the Jury were discharged with the prisoner's consent.

In our opinion, the legal signification of the entry " Juror withdrawn" is, that it was done by agreement between the prisoner and the State, or between their respective counsel. Such has long been the definite signification of these words; and it accords with the fact which it is intended to manifest.

One of the several methods of discharging a jury, is for the parties, by agreement, to withdraw a Juror. Usually this is done at the recommendation of the Judge. But a Judge never directs this except with the consent of the parties. (2 *Bouv. Law Dic.* 634. 1 *Ch. Cr. Law* 630. *Bac. Abr. Ar. Juries, C.* 9.)

The books do not enable us to trace this practice with accuracy to its source. It seems almost certain, however, that it had its origin in one of those fictions to which resort was some-

times had for the purpose of avoiding the rigor of the Common Law.

Sir Edward Coke says, "A Jury sworn and charged in a case of life or member, cannot be discharged by the Court or any other, but they ought to give a verdict. And the King cannot be non-suit, for he is in judgment of Law ever present in Court: but a common person may be non-suit." (*Coke's Rep.* 227.) This was undoubtedly the ancient Law. *(Cok. Litt.* 227. 2 *Hale P. C.* 295. *Note.*)

Under the influence of this stern rule strictly enforced, when once a Jury was charged with a capital case, whatever might intervene, however much it might be desired by all interested, the Jury could not be discharged, and the prisoner again tried.

To evade this provision, therefore, we think it probable, that where the prisoner was consenting to a mis-trial, the practice was adopted of withdrawing a juror, *feignedly* without the knowledge or concurrence of the Court. When this was done, the case could not go on *pro defectu juratorum.* The rule which had been adopted was thus held not to be violated.

In process of time, the practice coming to be frequent and familiar, met with the direct and open concurrence or recommendation of the Judge. Then it was, probably, that from the criminal side of the Court it passed over to the civil, as one of the methods of discharging a Jury.

However this may be, we agree in holding that a proper construction of the record shows that the jury was discharged with the prisoner's consent.

Judgment affirmed.